IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TODD GREENWALD, | |
| Plaintiff, | 4:12-CV-3034 |
| vs. | |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

     This matter is before the Court on plaintiff Todd Greenwald's motion for attorney fees and costs (filing 63), and his request for prejudgment interest,[1] on his second claim, for benefits under the Wells Fargo Long-Term Disability Plan (the "LTD Plan"). Greenwald's claim for fees, costs, and prejudgment interest depends upon resolution of a disputed issue of fact. The Court cannot resolve the dispute without an opportunity to assess the credibility of Greenwald and an employee of Liberty Life, Irene Martin, who have submitted conflicting affidavits on the facts at issue. The Court will therefore set this case for a hearing, at which both parties may present evidence and arguments on the matters in dispute.

## PROCEDURAL BACKGROUND

     Greenwald's complaint asserted three claims for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. Greenwald's first claim sought benefits under the Wells Fargo Short-Term Disability Plan (the "STD Plan"). His second claim sought benefits under the LTD Plan, and his third was for statutory penalties under 29 U.S.C. § 1132(c) for Wells Fargo's failure to produce certain plan documents.

---

[1] Greenwald's motion for attorney fees did not request an award of prejudgment interest. Filing 63. But he did request such an award in his complaint (filing 1 at ¶ 37) and in his previous motion for summary judgment on his second claim. Filing 67. Although the parties have agreed to the dismissal of Greenwald's second claim, with prejudice, and to the withdrawal of his motion for summary judgment (*see* filing 81), they have continued to treat the request for prejudgment interest as active. *See* filing 86 at 1 & n.1. The Court will therefore do likewise.

Greenwald was a Wells Fargo employee until February 2011, when he found himself unable to continue working due to long-standing problems with his back and right hip. At that time, he submitted a claim for benefits under the STD Plan. Filing 48 at ¶¶ 10–11. His claim was denied on its initial review, and on appeal, by Liberty Life, and then denied again on his final appeal to Wells Fargo in September 2011. Filing 39 at 70–74; filing 39-1 at 109–112; filing 39-4 at 17–19.

Greenwald asserts that in November 2011, he tried to apply for LTD benefits, but was told he could not. Liberty disputes this claim, as explained below. From November 2011 until February 2012, Greenwald also made multiple, unsuccessful requests to Wells Fargo for copies of the official plan documents governing the STD and LTD Plans. *See* filing 87 at 38–40. Greenwald had previously received copies of the summary plan descriptions for both plans. Both were contained in one "Benefits Book." Filing 39-3. A separate provision of the Benefits Book explained that the summary plan descriptions could not "replace or change any provision of the actual plan documents," and that in the case of a conflict between a summary description and "the official plan document," the official version controlled. Filing 39-3 at 11. It was not until after Greenwald filed this suit in February 2012 (filing 1), that he received the official plan document for the LTD Plan (there was, in fact, no separate, official document for the STD Plan). *See* filing 87 at 39.

In May 2012, the parties voluntarily agreed to remand Greenwald's second claim, for benefits under the LTD Plan, to Liberty for administrative review. The Court entered an order staying the case and setting forth deadlines for Liberty's review of Greenwald's claim, pursuant to the parties' stipulation. Filings 33 and 35. On remand, Greenwald submitted additional evidence, including updated medical records. Filing 72-1 at 4–5. In July 2012, Liberty issued its initial determination, denying Greenwald's claim. Filing 60 at ¶ 3. Greenwald appealed, and submitted more evidence, including additional updated medical records and a functional capacity evaluation conducted in August 2012. Filing 60 at ¶ 4; filing 72-1 at 6–7. In November 2012, Liberty's appeal committee overturned the initial denial and awarded LTD benefits retroactive to July 2011. Filing 60 at ¶ 5; filing 65 at ¶ 7.

While Greenwald's LTD claim was being reviewed by Liberty, his first and third claims for relief continued before the Court. In March 2013, the Court entered judgment in favor of Greenwald on his first and third claims, remanding the first for administrative review, and awarding damages on the third. Filing 87. The parties have since resolved Greenwald's claim for STD benefits and reached an agreement regarding costs and attorney fees on that claim and his third claim. Filing 101. Finally, the parties have stipulated to dismiss Greenwald's claim for LTD benefits with prejudice. Filings 81 and 82.

All that remains is Greenwald's claim for costs, attorney fees, and prejudgment interest on this claim. Greenwald has stipulated that the proper parties to this claim are Liberty and the LTD Plan. Filing 81 at ¶ 6.

## DISCUSSION

In most lawsuits seeking relief under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149 (2010), the Supreme Court clarified that a party need not attain "prevailing party" status to receive such an award, but must achieve "some degree of success on the merits." *Id.* at 2152, 2156–59. This requires more than a "trivial" success on the merits, or a "purely procedural" victory; but the standard is satisfied if the Court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into whether the party's success was substantial, or occurred on a central issue. *Id.* at 2158.

In *Hardt*, the trial court ordered a remand for further administrative proceedings after finding that the defendant had failed to conduct a full and fair review of the plaintiff's claim for benefits. *Id.* at 2158–59. The trial court also found that there was compelling evidence the plaintiff was entitled to benefits, and further ordered that if the administrator failed to act on the plaintiff's application within 30 days, judgment would be issued in favor of the plaintiff. *Id.* at 2159. Thereafter, the plan administrator reversed its decision and awarded the plaintiff the benefits she sought. The Court found that, on these facts, the plaintiff had achieved far more than a trivial, or purely procedural victory. The Court left open whether a remand order, without more, constitutes some degree of success on the merits. *Id.*

Following *Hardt*, several courts have found that a remand order, standing alone, may support an award of attorney fees. *See, e.g.*, *Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, 2011 WL 2601569, at \*7 (D. Md. 2011); *Olds v. Ret. Plan of Int'l Paper Co., Inc.*, 2011 WL 2160264, at \*2 (S.D. Ala. 2011); *Young v. Verizon's Bell Atl. Cash Balance Plan,* 748 F. Supp. 2d 903 (N.D. Ill. 2010); *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 2010 WL 3855239, at \*3–4 (E.D. Mich. 2010). Greenwald has not only achieved a remand; after his claim was remanded, he was ultimately awarded benefits. This is far from a trivial success. However, this victory followed the parties' voluntary agreement to remand Greenwald's claim, with no substantive involvement by the Court. Therefore, defendants argue, this claim cannot be considered success "on the merits."

Defendants contend that the *Hardt* standard requires more substantive judicial involvement—in other words, that the relief must be achieved by

court order. This argument echoes the rule set forth in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001). *Buckhannon* dealt with federal statutes that authorized an award of attorney fees to the "prevailing party." *Id.* To attain that status, a party must obtain a judicially sanctioned, material alteration of the parties' legal relationship. *Id.* at 604–05. A defendant's voluntary change in conduct, by contrast, lacks the necessary judicial *imprimatur* to confer prevailing party status. *Id.* at 605. Under *Buckhannon*, Greenwald would not be entitled to an award of fees. At least one district court has applied the reasoning of *Buckhannon* to ERISA. *Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund,* 2012 WL 6005657 (D.N.J. 2012).

Greenwald urges the Court to apply the catalyst theory of attorney fees. Under this theory, a plaintiff can obtain fees even though the litigation did not result in a favorable judgment, if "the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief." *D.F. v. Collingswood Borough Bd. of Educ.,* 694 F.3d 488, 501 (3d Cir. 2012); *see also Hooper v. Demco, Inc.,* 37 F.3d 287, 292 (7th Cir. 1994). Several district courts have applied the catalyst theory in ERISA cases. *See, e.g.*, *Flores v. Life Ins. Co. of N. Am.,* 770 F. Supp. 2d 768, 776 (D. Md. 2011); *Taaffe v. Life Ins. Co. of N. Am.,* 769 F. Supp. 2d 530, 541–42 (S.D.N.Y. 2011); *see also Hackett v. Standard Ins. Co.,* 2010 WL 5068098, at *2, 5–7 (D.S.D. 2010); *cf., In re Interstate Bakeries Corp.,* 704 F.3d 528, 540–41 (8th Cir. 2013) (Bye, C.J., dissenting); *Feldman's Med. Ctr. Pharm., Inc. v. CareFirst, Inc.,* 898 F. Supp. 2d 883, 896–905 (D. Md. 2012).

This Court finds the plaintiff's view the more persuasive of the two, and joins those courts that have applied the catalyst theory to fee claims under ERISA. First, as the Court noted above, an award of attorney fees under § 1132(g) does not require the fee claimant to achieve prevailing party status. *Hardt,* 130 S. Ct. at 2156. Therefore, *Buckhannon* is not controlling. Second, ERISA is remedial legislation, and should be interpreted to advance Congress' goals of protecting employee rights and securing effective access to federal courts. *Starr v. Metro Sys., Inc.,* 461 F.3d 1036, 1040 (8th Cir. 2006). Those goals are better served by applying the catalyst theory, which will discourage insurers and plan administrators from wrongfully denying claims, only to offer benefits after being sued. *Taaffe,* 769 F. Supp. 2d at 541; *cf. Zacharkiw v. Prudential Ins. Co. of Am.,* 2012 WL 551639, at *5 (E.D. Pa. 2012).

Defendants next argue that Greenwald is nonetheless barred from obtaining attorney fees because he failed to exhaust his administrative remedies. Before filing suit in federal court, ERISA claimants are required to exhaust the administrative remedies required under their plan. *Angevine v.*

*Anheuser-Busch Cos. Pension Plan*, 646 F.3d 1034, 1037 (8th Cir. 2011). There are, however, exceptions to the exhaustion requirement, such as when there is no administrative remedy for the claimant to pursue, *Reindl v. Hartford Life and Acc. Ins. Co.*, 705 F.3d 784, 787 n.4 (8th Cir. 2013), or where the claimant has been "denied meaningful access" to those remedies. *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000).

As alluded to earlier, there is a factual dispute that bears directly on the exhaustion issue. On November 3, 2011, Greenwald called and spoke with a Liberty Life representative named Irene Martin. Filing 47 at ¶ 6; filing 72-2 at ¶¶ 1–5. Greenwald and Martin have submitted conflicting accounts of this conversation. Defendants claim that Greenwald never actually tried to apply for LTD benefits, and has thus failed to exhaust his administrative remedies. Greenwald counters that it was Liberty that prevented him from applying in the first place.

Greenwald averred that when he spoke to Martin, he requested an application for LTD benefits, but that Martin told him there was no separate application process for LTD claims. Instead, according to Greenwald, Martin stated that halfway through the 26-week STD period, Liberty Life would send the file to the LTD department, which would initiate the process for long-term benefits. Martin also explained that there was no means of applying for LTD benefits unless a claimant was already receiving STD benefits. Filing 47 at ¶ 6. Greenwald averred that, having not received the official LTD plan documents from Wells Fargo, he relied on Martin's statement and did not press the matter further, and instead filed suit for his LTD benefits "under the assumption that [he] had been correctly advised by [Martin]." Filing 47 at ¶ 7. Greenwald claimed that, had he received the official LTD plan documents, he would have known that LTD benefits were not dependent upon receipt of STD benefits, and would have insisted on filing an LTD claim in November 2011. Filing 47 at ¶¶ 8–10.

Martin remembers the conversation differently. According to her, Greenwald asked whether his LTD claim would be approved if his lawsuit for STD claims was successful. She does not recall Greenwald asking to apply for LTD benefits, and states that if he had, she would have made a note of it. Filing 72-2 at ¶ 6. Martin was familiar with the LTD and STD plans, and knew that LTD benefits were not contingent upon receipt of STD benefits, and denies telling Greenwald anything to the contrary. Filing 72-2 at ¶¶ 3, 7.

Liberty's records contain a short note by Martin, summarizing her conversation with Greenwald. Martin first noted that she had a "lengthy" conversation with Greenwald, who informed her that his final appeal on his claim for STD benefits had been denied by Wells Fargo. She then wrote:

> [Greenwald] stated he plans to pursue legal action and wanted to know if in the event his case is successful, would his LTD claim also be approved . . . [Martin] explained that if his STD claim were retroactively approved thru max benefit date and his disability was supported ongoing to and beyond the LTD benefit begin date, his claim could be considered for LTD.

Filing 39 at 57. Greenwald claims that this record is incomplete, in that it does not include his request to file an LTD claim. Filing 47 at ¶ 11. Martin counters that her notes are an accurate summary of their conversation. Filing 72-2 at ¶ 5.

If Greenwald's account is credited, then Liberty may have denied him meaningful access to any administrative remedy, such that his failure to apply should be excused. In *Conley v. Pitney Bowes*, 34 F.3d 714, (8th Cir. 1994), the court excused the claimant's failure to appeal when his employer, which was required to inform him of the appeal procedure at the time it denied benefits, failed to do so. Under *Conley*, a failure to exhaust may be excused when the claimant lacks notice or knowledge of the available review procedures. *Id.*; *cf. Wert v. Liberty Life Assur. Co. of Boston, Inc.*, 447 F.3d 1060, 1066 (8th Cir. 2006). So, it must also be excused when the claimant is simply denied access. *See Carter v. Signode Indus., Inc.*, 688 F. Supp. 1283, 1287 (N.D. Ill. 1988); *cf.*, *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402–03 (7th Cir. 1996); *Curry v. Contract Fabricators, Inc. Profit Sharing Plan,* 891 F.2d 842, 846–47 (11th Cir. 1990); *cf. also Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 542 (7th Cir. 1996) (holding that in ERISA context, "a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract.").

Defendants claim that the Benefits Book makes clear that LTD benefits are not dependent upon STD benefits, and that the Book "clearly outlines the claim and appeal process, which includes the submission of the requisite claim forms." Filing 73 at 27. This, defendants argue, should have put Greenwald on notice "that something was amiss with Ms. Martin's alleged statements, and should have prompted a challenge to what -- if true -- was plainly an adverse benefit determination." Filing 73 at 27.

But the Court is not convinced that matters are as clear cut as defendants make them out to be. The Benefits Book also informed LTD plan participants that "[i]f you have a claim for benefits that is *denied or ignored* in whole or in part and you have exhausted the claims procedure for the plan, you may file suit in a state or federal court." Filing 39-3 at 221 (emphasis

supplied). Greenwald is not arguing that his claim was denied or ignored, but that he was not allowed to make a claim in the first place.

If Greenwald is believed, Martin's statements were not the same thing as a denial. *Cf. Grodesky v. Lucent Techs., Inc.*, 2003 WL 174186, at *4–5 (N.D. Ill. 2003). Nor can it fairly be said that his attempt to file a claim was ignored. According to Greenwald, far from ignoring his claim, Martin told him he could not make one and there was no way for him to do so. The Court also notes that, under the terms of the summary plan description, if Liberty had denied Greenwald's claim, it would have been required to notify him of the basis for the denial, including a reference to the "specific LTD Plan provision(s) on which the denial [was] based." Filing 39-3 at 168. There is no evidence this occurred—which is not surprising, because it would have been difficult to refer Greenwald to a provision of the plan that defendants acknowledge does not exist. In these circumstances, it may be that Greenwald's failure to resort to the plan's appeal procedures should be excused, as those procedures applied only to claims that were denied or ignored. Simply put, if Greenwald was not allowed to make a claim in the first place, there was nothing to appeal.

Greenwald would therefore be eligible for an award of attorney fees incurred in bringing this suit. And he would potentially be able to recover fees incurred in the subsequent administrative proceedings before Liberty. Generally, fees are unavailable for expenses incurred while exhausting administrative remedies. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1011 (8th Cir. 2004). This rule, however, applies to expenses incurred during *pre*-litigation administrative review. Where the administrative proceedings are ordered by the court and where the court retains jurisdiction over the action during the pendency of the administrative proceedings, ERISA authorizes an award of the associated fees and costs. *Rote v. Titan Tire Corp.*, 611 F.3d 960, 965–66 (8th Cir. 2010). Here, while the remand was stipulated to rather than ordered, the Court nonetheless retained jurisdiction over the action. Therefore, Greenwald may be entitled to attorney fees incurred on remand.[2] *Cf. Johnson v. Prudential Ins. Co. of Am.*, 2008 WL 901526 (S.D. Tex. 2008).

---

[2] Defendants argue that, even if the catalyst theory applies to claims for attorney fees under ERISA, Greenwald has failed to show that it was his lawsuit that catalyzed the award of LTD benefits. On remand, Greenwald's LTD claim was denied initially, and only approved when he submitted the results of a functional capacity evaluation—the sort of "objective" evidence which Liberty and Wells Fargo had previously faulted Greenwald for failing to provide. Filing 87 at 18–19, 27–29, 35. This argument is not without merit. *See Zacharkiw*, 2012 WL 551639, at *5; *see also, Staats v. Procter & Gamble Long Term Disability Allowance Plan*, 2012 WL 3705000 (W.D. Pa. 2012); *Reimann v. Prudential Ins. Co. of Am.*, 2010 WL 4116743 (E.D. Wis. 2010). But if Greenwald's version of events is believed, his

On the other hand, if Martin and defendants' version of the November 2011 conversation is credited, then Greenwald never tried to apply for LTD benefits, and he has failed to exhaust his administrative remedies. In that case, the general rule barring recovery of expenses incurred in pre-litigation administrative proceedings would control. If Greenwald had exhausted his remedies before bringing this suit, he would not have been able to claim fees for any attorney's work on the administrative proceedings. *Parke*, 368 F.3d at 1011. Where the only reason that such proceedings occurred after a court assumed jurisdiction of the case is the claimant's own failure to participate in those proceedings in the first place, an award of fees is inappropriate. *Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003).

However, the Court cannot resolve the exhaustion issue, and hence Greenwald's entitlement to fees and costs, until the parties' factual dispute is resolved.[3] To do so, the Court must make a credibility determination. If it can be avoided, the Court will not make that determination on the basis of the witnesses' affidavits alone. More evidence, and in particular, live testimony, will assist the Court in making a decision more worthy of confidence, and more likely to be accepted by the parties as fair. So, the Court will set this case for a hearing, at which both parties may present evidence on the disputed facts (and other relevant issues identified in this Memorandum and Order).

Greenwald's request for an award of prejudgment interest is likewise contingent upon the exhaustion issue and must be deferred until the underlying factual dispute can be resolved. Before prejudgment interest may be awarded under ERISA, the plaintiff must show a breach of the plan's terms or ERISA's requirements. *Jackson v. Fortis Benefits Ins. Co.*, 245 F.3d 748, 750 (8th Cir. 2001); s*ee also Fotta v. Trustees of United Mine Workers of Am.*, 319 F.3d 612, 616 (3d Cir. 2003). If payment of Greenwald's benefits was

---

lawsuit was likely the catalyst for him being allowed to submit a claim in the first place. And in that event, he would be entitled to at least the fees incurred in bringing this suit. Whether, and to what extent, Greenwald should be permitted an award of fees incurred during the post-remand administrative proceedings remains to be seen, but need not be addressed further at this point.

[3] Greenwald tries to make hay out of the fact that, although Liberty made an audio recording of his conversation with Martin, it was destroyed shortly before this case was filed. However, the recording was destroyed pursuant to Liberty's regular document destruction policies, which provide for the automatic destruction of such recordings after 90 days. Filing 79. At this time, there is no evidence that this was anything but routine adherence to Liberty's policy, and there is no basis for drawing an adverse inference against defendants. *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).

only delayed because he failed to apply in the first place, he is not entitled to prejudgment interest. Accordingly,

    IT IS ORDERED:

1.    The Court will conduct a hearing to resolve the disputed issues of fact surrounding Greenwald's motion for attorney fees, costs, and prejudgment interest (filing 63). The parties are directed to contact the Court to set a date and time for the hearing.

Dated this 12th day of July, 2013.

                              BY THE COURT:

                              *John M. Gerrard*
                              John M. Gerrard
                              United States District Judge